Claudia C. Bohorquez, Esq., SBN 150647
LAW OFFICES OF CLAUDIA C. BOHORQUEZ
A Professional Corporation
8383 Wilshire Blvd., Suite 800
Telephone: (323) 648-6761
Facsimile: (323) 978-6637
Email: cbohorquez@bohorquezlawgroup.com

Attorney for Plaintiff, NOE PRIETO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NOE PRIETO, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Negligence (Federal Tort Claims Act 28 U.S.C. §2671 et seq.) Over-detention in Custody<br><br>2. False Imprisonment (Federal Tort Claims Act 28 U.S.C. §§2671 et seq.) |

     Plaintiff NOE PRIETO, an individual, for his Complaint against defendant UNITED STATES OF AMERICA alleges as follows:

**INTRODUCTION**

     1.  Mr. Prieto was unlawfully imprisoned for 113 days beyond the end of his actual prison sentence in federal prisons in Victorville and Terminal Island (San Pedro), California.

     2.  The Federal Tort Claims Act ("FTCA") provides a limited waiver of the United States' sovereign immunity for the negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment "under [like] circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place

-1-

COMPLAINT

where the [tortious] act or omission occurred."  28 U.S.C. §§1346(b)(1), 2674.

## VENUE AND JURISDICTION

3.  This Court has original jurisdiction over Mr. Prieto's FTCA claims pursuant to 28 U.S.C. §1346(b)(1) (claims against United States).

4.  Venue is proper in this Court under 28 U.S.C. §1391(e)(1)(B) because a substantial part of the incidents, events, and occurrences giving rise to the present action occurred in this district, and a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States.

## PARTIES

5.  Plaintiff, NOE PRIETO ("Mr. Prieto") resides in Tulare County, California, and sues in his individual capacity.

6.  Defendant UNITED STATES OF AMERICA ("United States") is liable under the FTCA for the acts and omissions of its employees (as described below) as well as the acts or omissions of unknown federal Bureau of Prisons ("BOP") officials, who were all federal employees working for the Bureau of Prisons, an agency of the United States, and acting within the course and scope of such employment at all times relevant to this action.

## FACTUAL ALLEGATIONS

7.  On July 20, 2011, Mr. Prieto pleaded guilty to a drug offense and sentenced to 120 months (10 years) in the custody of the  Bureau of Prisons ("BOP"), and upon release from imprisonment, supervised release (probation) for a term of 5 years with obligations and conditions of supervision, including that Mr. Prieto "shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon" and "shall cooperate in the collection of

-2-
COMPLAINT FOR DAMAGES

DNA as directed by the probation officer." *United States of America v. Noe Prieto et al.,* U.S.D.C. Case No. 0:10-cr-00224 (JNE/FLN) (Dist. of Minnesota).

8. On November 12, 2016, Mr. Prieto escaped from Taft Federal Prison Camp ("Taft"). Taft was a low security federal prison located in Taft, CA, near Bakersfield. It included a satellite prison camp for minimum security male inmates ("Taft Camp"). It closed on April 30, 2020.

9. On February 14, 2019, Mr. Prieto turned himself back into custody where he was detained at the Lerdo Pretrial Facility in Kern County at Bakersfield, CA. For security classification purposes, this was considered a "minor history of offense." (U.S. D.O.J./BOP, Program Statement P5100.08, 9/12/2006, *Inmate Security Designation and Custody Classification*.) He received a 9-month sentence to be added to his original 120-month sentence for a total of 129 months in custody.

10. In January 2021, Mr. Prieto was transferred to Federal Correctional Institution Victorville Medium I, a medium security level prison.

11. The transfer to Victorville Medium I was contrary to BOP policy which provides that an inmate cannot be placed in a facility that is two or more security levels above his classification.

12. Mr. Prieto had minimum security level camp points and should not have been housed at a medium security level prison.

13. The security levels within the BOP classification system include minimum, low, medium, and high.

14. Minimum security institutions, also known as Federal Prison Camps, have dormitory housing, a relatively low staff-to-inmate ratio, and limited or no perimeter fencing. These institutions are work and program oriented.

15. Low security Federal Correctional Institutions (FCIs) have double-fenced perimeters,

-3-
COMPLAINT FOR DAMAGES

mostly dormitory or cubicle housing, and strong work and program components. The staff-to-inmate ratio in these institutions is higher than in minimum security facilities.

16. Medium security FCIs have strengthened perimeters (often double fences with electronic detection systems), mostly cell-type housing, a wide variety of work and treatment programs, an even higher staff-to-inmate ratio than low security FCIs, and even greater internal controls.

17. Counselor Ms. Llamas (first name unknown) was Mr. Prieto's Case Manager at FCI Victorville Medium I.

18. Upon his arrival at FCI Victorville Medium I in January 2021, Mr. Prieto requested copies of his prison paperwork and good time credit computation worksheet to determine his release date and classification.

19. He received a document entitled, "Sentence Monitoring Good Time Data as of 2-16-21." His "current release date" was computed to be "4-7-2023" and his "projected satisfaction date" (that is, "release date" after application of good time credits) was "11-10-2022." Mr. Prieto knew this was not correct, missing good time credits, and he began to ask Ms. Llamas to help him correct the calculation and/or find out why he was missing good time credits. At first, Mr. Prieto did so informally, repeatedly asking Ms. Llamas for assistance and answers. She always told him she was waiting for responses from others.

20. Around October 2021, Mr. Prieto completed a BP8 form at the request of Ms. Llamas describing the miscalculation of the release date and good time credit. He handed it back to her for processing or filing. She did not give him a copy as required by BOP procedures.

21. In December 2021, Mr. Prieto filed more paperwork with Ms. Llamas letting her know she had still not responded and that he needed his release date corrected so that he could leave prison at the beginning of the year 2022 based on his good time credits. Ms. Llamas told

him she was still waiting for a response from others.

22. By January 2022, Ms. Llamas still had no answer or response and Mr. Prieto tried to speak with Warden T. Jusino who told him he needed to address the matter with Ms. Llamas.

23. Mr. Prieto also sent an email through the prison email system to administrative staff about the miscalculation of release date and good time credits.

24. Counselor Raygoza (first name unknown) at FCI Victorville Medium I also knew what Mr. Prieto was going through regarding the miscalculation of the release date and good time credits and that he was not getting any answers from Ms. Llamas.

25. All of January 2022, Mr. Prieto asked his case counselor Ms. Llamas multiple times if she had any response regarding the miscalculation of his release date and good time credits. Each time she told him she did not have any answers or information yet.

26. In February 2022, Mr. Prieto was awakened at 3:00 a.m., told to pack his bags, and within 20 minutes was being transferred to FCI Terminal Island, a low security institution.

27. At FCI Terminal Island, Mr. Prieto asked why he was transferred and a counselor told him it was because of his camp points and should not have been at a Medium Security prison such as FCI Victorville Medium I. The counselor's name is unknown at this time, but sounds like "Scholls."

28. Mr. Prieto told this counselor about his incorrect sentence computation and that it needed to be corrected because he should have been released already. It took about a month for Mr. Prieto's personal belongings including paperwork to arrive from FCI Victorville Medium I to Terminal Island.

29. Mr. Prieto showed the release date computation paperwork to the counselor at Terminal Island who told him to speak with R&D (Receiving and Discharge) Officer Olivares.

30. Mr. Prieto spoke to Officer Olivares and handed him the paperwork and told him he

was being held unlawfully past his correct release date. Mr. Olivares took the paperwork and the next day he told Mr. Prieto there was an error and apologized and told him he would be released immediately. This was Friday April 23, 2022.

31. At 7:00 a.m., Monday, April 26, 2022, Mr. Prieto was released from custody.

32. Mr. Prieto's corrected projected release date was January 3, 2022, accounting for his corrected allotment of good time credits.

33. The computation worksheet readily obtained by Mr. Olivares dated April 26, 2022 contained the following information.

Statutory Release Date Projected - **January 3, 2022**

Computation Full Term Date - July 10, 2023

Time served - 9 years 6 months 16 days

Percentage of Full Term Served - 88.7%

Percentage of Statutory Term Served – **103.3%**

By this data, Mr. Prieto served 3.3% more time over what should have been his January 3, 2022 release date.

34. As a result of the computation data obtained by Mr. Olivares, "Remarks" on the Computation Data worksheet dated April 26, 2022 indicated "I/M WILL BE AN IMMEDIATE RELEASE WITH 113 DAYS OVERSERVED."

35. Federal prisoners serving a "term of imprisonment" of more than one year (at least 12 months and one day) and less than life in prison are eligible to earn good time. Good time credit is earned for "good behavior" described in law as "exemplary compliance with institutional disciplinary regulations." Good time credit reduces a prisoner's actual time in BOP custody. This time off is also called "good conduct time." 18 U.S.C. §3624(b).

36. The 2-16-21 Sentence Monitoring Computation worksheet showed only 242 Good

Conduct Time (GCT) Earned and Projected Credits.   (A true and correct copy is attached hereto as Exhibit 1).

37.  The 4-26-22 Sentence Monitoring Computation worksheet showed 553 GCT Earned and Projected Credits demonstrating the error in calculation of the GCT credits, thereby exposing the time overserved by Mr. Prieto of 113 days.   (A true and correct copy is attached hereto as Exhibit 2).

38.  It only took Mr. Olivares at Terminal Island a few hours to get the correct computation.

39.   At the time of his transfer to FCI Victorville Medium I, Mr. Prieto was 34 years old. He was disabled. He used a walker and a cane at the facility due to nerve damage in his legs causing pain all day and he had 2 bulging discs in his lumbar spine, and suffered from chronic headaches.  He also suffered from anxiety and depression for which he has been on medication for the last 10 plus years.

40.  All of the medical conditions and ailments described above were exacerbated by his continued and wrongful confinement of which Mr. Prieto was very much aware.  His erroneous confinement at the medium security prison in Victorville was especially harrowing because it housed more dangerous inmates, there were fights every day, and the anxiety level only went up, and he became more depressed.

41.  Psychologically, seeing a release date on his paperwork which was many more months than Mr. Prieto knew to be correct was detrimental to his mental well-being.

42.  Untimely releases contravene judicial sentencing orders.  Mr. Prieto was deprived of his liberty and freedom for 113 days beyond his correct release date.

43.  The computation errors were caused by employees and/or agents of the United States. Sentence computation functions for the BOP are carried out at the Designation and Sentence

Computation Center (DSCC) located at the Grand Prairie Office Complex in Grand Prairie, TX.

44.  When an inmate is housed at a BOP institution, questions about a sentence computation should be brought to the attention of correctional system staff at the facility.  Mr. Prieto brought his sentence computation questions to the attention of staff at Victorville Medium I and nothing was done for the entire year he was housed there.

45. Mr. Prieto had less freedom at the Victorville Medium I facility because there he was confined to a cell.  He should have been at a minimum security facility where inmates enjoy more freedom and there is less violence.

46.  Mr. Prieto was scared and anxious at Victorville Medium I and this affected his mental well-being.  He feared for his safety.  He was vulnerable and in a weakened physical condition having to walk with a cane and walker.

47.  Each time Mr. Prieto went for medical, he was denied any treatment because it is common knowledge that inmates known to have less than 18 months left on a sentence simply are not given thorough or complete medical attention.

48. Towards the end of his confinement at Victorville Medium I, Mr. Prieto's entire unit was locked down for about 2 weeks because everybody including Mr. Prieto became infected with Covid.  Showers were only allowed three times a week during this lockdown.  This all happened at a time when Mr. Prieto should already have been released from prison.

49.  Mr. Prieto was transferred to Terminal Island at a time when he should have already been released.  The delay of one month in getting his personal belongings and papers from the Victorville facility caused further mental pain and suffering as he needed the 2-16-21 sentence computation document to show staff at Terminal Island so they could help him, even though he told them the problem as soon as he arrived there.

50.  Mr. Prieto submitted his administrative Claim for Damages to the Federal Bureau of

-8-
COMPLAINT FOR DAMAGES

Prisons before filing this action.  The claim was denied.

## COUNT I

### NEGLIGENCE
### Pursuant To Federal Tort Claims Act, 28 U.S.C. §2671 Et Seq.

### (By Plaintiff Noe Prieto against Defendant United States)

51.  The allegations contained in paragraphs 1 through 50 are incorporated herein by reference as if set forth here in their entirety.

52.  BOP staff at Victorville Medium I, Terminal Island, and DSCC had a duty to act with reasonable care and not subject Mr. Prieto to personal injury during the course of their duties.

53.  BOP staff at Victorville Medium I, Terminal Island, and DSCC had a duty not to deprive Mr. Prieto of liberty without due process.  Specifically, they had a duty to not continue to detain Mr. Prieto where he had completed his prison sentence and paid his debt to society.

54.  BOP staff at Victorville Medium I, Terminal Island, and DSCC had a duty to adequately train and supervise their subordinates and to establish and enforce policies and practices to prevent the occurrence of unconstitutional and tortious actions by their subordinates, including miscalculating their release dates and their good time credits.

55.  BOP staff at Victorville Medium I, Terminal Island, and DSCC had a duty to act with reasonable care in calculating Mr. Prieto's custody release date and promptly correct any mistakes in compliance with governing laws and policies.

56.  BOP staff at Victorville Medium I, Terminal Island, and DSCC had a duty to act with reasonable care in calculating Mr. Prieto's good time credits as established by the First Step Act and promptly correct any mistakes.

57.  BOP staff at Victorville Medium I, Terminal Island, and DSCC had a duty to act with reasonable care to promptly and meaningfully examine Mr. Prieto's claim regarding an incorrect

calculation of good time credits and custody release date, and promptly correct it.

58. BOP staff at Taft Camp and Victorville Medium I had a duty to act with reasonable care in classification and housing of Mr. Prieto and promptly correct his housing assignment at a medium security prison.

59. BOP staff at Taft camp, Victorville Medium I, Terminal Island, and DSCC breached their duties as set forth above while in the course and scope of their employment with the United States.

60. As a proximate and reasonably foreseeable result of the BOP employees' actions and omissions, Mr. Prieto suffered personal injuries, including 113 days of unlawful detention and imprisonment, loss of liberty, loss of enjoyment of life, mental pain and suffering, psychological anguish, anxiety, humiliation, physical injury (Covid infection), lost wages, shock, confusion, nervousness, fright, worry; continued post-incarceration emotional distress as a result of the unlawful over-detention. BOP employees' actions and omissions were a substantial factor in causing harm to Mr. Prieto.

61. At all times during Mr. Prieto's unlawful detention, BOP staff, including Warden Jusino, Case Manager Llamas, Counselor Raygoza, Counselor "Scholls," and staff at DSCC were employees of the United States acting within the course and scope of their employment. Defendant United States, therefore, is liable for the actions of the BOP staff under the FTCA for negligence.

## COUNT II

### FALSE IMPRISONMENT
### Pursuant to Federal Tort Claims Act, 28 U.S.C. §2671 et seq.

### (By Plaintiff Noe Prieto against Defendant United States)

62. The allegations contained in paragraphs 1 through 50 are incorporated herein by

reference as if set forth here in their entirety.

63.  BOP staff at Victorville Medium I, Terminal Island, and DSCC caused Mr. Prieto to continue to be detained without legal justification beyond the end of his completed prison sentence of January 3, 2022 and was not released until April 26, 2022 – an over detention of 113 days.

64.  Mr. Prieto was aware of his over detention and did not consent to it.

65.  At all times during Mr. Prieto's over-detention, BOP staff at Victorville Medium I, Terminal Island, and DSCC, including Warden Jusino, Case Manager Llamas, Counselor Raygoza, Counselor "Scholls" were aware, or reasonably should have been aware, that they lacked the authority to continue to detain Mr. Prieto under the governing laws and policies, that their conduct was unlawful, and not otherwise privileged.

66.  As a proximate and reasonably foreseeable result of the BOP employees' actions and omissions, Mr. Prieto suffered personal injuries, including 113 days of unlawful detention and imprisonment, loss of liberty, loss of enjoyment of life, mental pain and suffering, psychological anguish, anxiety, humiliation, physical injury (Covid infection), lost wages, shock, confusion, nervousness, fright, worry; continued post-incarceration emotional distress as a result of the unlawful over-detention.  BOP employees' actions and omissions were a substantial factor in causing harm to Mr. Prieto.

67.  At all times during Mr. Prieto's unlawful detention, BOP staff, including Warden Jusino, Case Manager Llamas, Counselor Raygoza, Counselor "Scholls," and staff at DSCC were employees of the United States acting within the course and scope of their employment. Defendant United States, therefore, is liable for the actions of the BOP staff under the FTCA for false imprisonment.

COMPLAINT FOR DAMAGES

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

1. Declaring that defendant United States is liable for the tortious conduct of its employees including those officials at Taft Camp, Victorville Medium I, Terminal Island, and DSCC acting within the course and scope of their employment for the United States;

2. Awarding compensatory damages to Mr. Noe Prieto against United States under the FTCA (28 U.S.C. §2674);

3. Awarding prejudgment interest to Mr. Watson on any damages to the extent permitted by law;

4. Awarding reasonable attorney's fees to Mr. Prieto to the extent applicable pursuant to 28 U.S.C. §§2412(b) and 2412(d)(1)(A); and/or any applicable law, if any;

5. Awarding costs to plaintiff;

6. Granting such other relief as they Court may deem just and proper under the circumstances.


Dated:  November 27, 2023                LAW OFFICES OF CLAUDIA C. BOHORQUEZ

By: _____
Claudia C. Bohorquez, Esq.
Law Offices of Claudia C. Bohorquez
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
T. 323.648.6761
F. 323.978.6637
cbohorquez@bohorquezlawgroup.com

Attorney for Plaintiff NOE PRIETO

-12-
COMPLAINT FOR DAMAGES

# EXHIBIT 1

Case 2:23-cv-09969-MRA-PD   Document 1   Filed 11/27/23   Page 14 of 16   Page ID #:14

```
                                                                    12:31:09

                            SENTENCE MONITORING
      22  *                    GOOD TIME DATA                    *
      001  *                 AS OF   02-16-2021                  *      02-16-2021
                                                                       07:03:09
     15247-041          NAME: PRIETO, NOE
     VIM A-DES
  UTATION NUMBER..: 010
                                                          PLRA
  UPDATED:  DATE.: 01-26-2021              PRT    ACT DT:
  IT..................: E3/4          FACL..: DSC    CALC: AUTOMATIC
  ATE COMP BEGINS....: 07-20-2011     QUARTERS...............: E01-106U
  OTAL JAIL CREDIT...: 376            COMP STATUS............: COMPLETE
  URRENT REL DT......: 04-07-2023 FRI TOTAL INOP TIME.......: 823
  ROJ SATISFACT DT...: 11-10-2022 THU EXPIRES FULL TERM DT: 07-10-202
  CTUAL SATISFACT DT.:                 PROJ SATISF METHOD..: GCT REL
  AYS REMAINING......:                 ACTUAL SATISF METHOD:
  ED PART STATUS.....:                 FINAL PUBLC LAW DAYS:
                                       DEPORT ORDER DATED..:
```

------------------------GOOD CONDUCT TIME AMOUNTS------------------------

| START DATE | STOP DATE | MAX DIS | POSSIBLE TO FFT | ACTUAL TOTALS DIS | FFT | VESTED AMOUNT | VESTED DATE |
|---|---|---|---|---|---|---|---|
| 07-10-2010 | 07-09-2011 | 54 | 54 | | | | |
| 07-10-2011 | 07-09-2012 | 54 | 108 | | | | |
| 07-10-2012 | 07-09-2013 | 54 | 135 | 27 | | | |
| 07-10-2013 | 07-09-2014 | 54 | 189 | | | | |
| 07-10-2014 | 07-09-2015 | 54 | 243 | | | | |
| 07-10-2015 | 07-09-2016 | 54 | 297 | | 270 | | |
| 07-10-2016 | 10-10-2019 | 54 | 40 | 41 | | | |
| 10-11-2019 | 10-10-2020 | 54 | 94 | | | | |
| 10-11-2020 | 10-10-2021 | 54 | | | | | |
| 10-11-2021 | 10-10-2022 | 54 | | | | | |
| 10-11-2022 | 07-10-2023 | 40 | | | | | |

```
     TOTAL EARNED AMOUNT.......................................:    94
     TOTAL EARNED AND PROJECTED AMOUNT........................:   242
```

# EXHIBIT 2

*04-26-2022
12:31:09

15247-041  NAME: PRIETO, NOE

PRIOR CREDIT TIME..........:
INOPERATIVE TIME..........: 376
GCT EARNED AND PROJECTED..: 823
GCT EARNED................: 553
TORY RELEASE DATE PROJECTED: 459
LY OFFENDER TWO THIRDS DATE: 01-03-2022
ATION FULL TERM DATE......: 03-11-2019
SERVED....................: 07-10-2023
ENTAGE OF FULL TERM SERVED..:          9 YEARS        6 MONTHS        16 DAYS
NT OF STATUTORY TERM SERVED: 88.7
                            103.3

AL SATISFACTION DATE........: 04-26-2022
AL SATISFACTION METHOD......: GCT REL
AL SATISFACTION FACILITY....: TRM
AL SATISFACTION KEYED BY....: FAO

REMAINING..................: 440
PUBLIC LAW DAYS...........: 0

RKS........: UPDTD 11-07-2012 FOR DIS GCT. KAN/T
            10-29-19 REC'D APPREHENSION/ESCAPE REPORT ARRESTED BY USMS O
            02-14-2019 IN CALIFORNIA. ESCAPE CHARGE IN EASTERN DISTRICT
            CALIFORNIA #5:18-MJ-00010-JLT-1(PENDING) UPDATED DIS/FFT AND
            UPDATED GCT PER FSA T/SNC
            1-25-21 REC'D CS SENTENCE FOR 9 MONTHS T/KDT
            4-26-22 REMOVED FFT/DIS. I/M WILL BE AN IMMEDIATE RELEASE W/
            113 DAYS OVERSERVED DAYS.T/DMW;